UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DENIS HENEGHAN,

      Plaintiff,

   - against -

NEW YORK CITY ADMINISTRATION
FOR CHILDREN'S SERVICES,

      Defendant.
----------------------------------------X

**MEMORANDUM DECISION**

CV-03-2992 (BMC) (LB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 12 2006 ★
P.M. _____
TIME A.M. _____

COGAN, District Judge.

This is an action for age and disability discrimination. Plaintiff claims that after he recovered from a disability, his former employer declined to rehire him on the basis of his age and his former disability. Presently before the Court is defendant's motion for summary judgment. The motion is granted for the reasons set forth below.

## BACKGROUND

Plaintiff started working for the City of New York (the "City") in 1984 or 1985 (plaintiff contends the former; the defendant contends the latter, but the difference is immaterial) as an Investigator for the Human Resources Administration of the City of New York ("HRA"). He became a Caseworker for HRA in 1988. The term "Caseworker" is apparently broader than its commonly understood meaning, i.e., working one-on-one with persons in need of social services; the City submits that it overlaps with plaintiff's prior job as Investigator, and plaintiff has not disputed that.

The New York Civil Service Law sets forth the mechanism for medical leaves and termination as a result of disability. Under §72 of that title, if an employee becomes disabled for

reasons unrelated to his or her job, the City may require a medical examination, and the employee will be placed on leave if found to be unable to perform his duties. Under §73, the period of such disability leave is one year. If, at the end of that period, the employee remains unable to do his job, he is subject to termination. Section 73, however, also has a one year, post-termination grace period. If the employee applies to the agency for a medical examination within that time, and the medical examination shows that he is no longer disabled, then the employee is to be reinstated to his former position or to "a similar position in a lower grade in the same occupational field." N.Y. Civ. Serv. Law § 73.

On or about September 29, 1995, plaintiff was placed on medical leave. He was terminated on January 6, 1997, the City having received no notice that his disability had ended. He then applied for reinstatement and passed his medical examination in April, 1999. Accordingly, on May 3, 1999, the City sent him a letter advising him that he was medically fit to resume work as a Caseworker and that he would be reinstated in his former position as a Caseworker or to a similar position or a position in a lower grade in the same occupational field, depending on vacancies. The letter also advised that if there was no appropriate vacancy, his name would be placed on a preferred list for a Caseworker position, and he would remain eligible for any such position for four years.

During the time that plaintiff had been on disability leave, the job he had occupied was administratively relocated in the City's social service bureaucracy. As noted, he had worked as a Caseworker for HRA. However, while he was on leave, the HRA Caseworker positions were shifted to the newly created Administration for Children's Services ("ACS") (the defendant here).

Nevertheless, for reasons that are not disclosed in the record, in January or February, 2000, plaintiff received a Notice from HRA that it had an opening for a Caseworker and that plaintiff could interview for that job. The Notice stated that "if you fail to report to the scheduled interview, or if you decline the position, your name will be removed" from the preferred list. The Notice further stated that if this happened, plaintiff would have the right to request restoration to the preferred list, although the standards that would be applied in deciding such a request were not spelled out. However, plaintiff was somewhat familiar with this process; the City had involuntarily removed him from the preferred list in 1999 when ACS attempted to set up an interview for which he failed to appear. He obtained restoration to the list based on his statement that he had not received the notices for the interview.

Plaintiff appeared for the interview at HRA. Although the Notice described the position as that of "Caseworker," plaintiff alleges that he was told at the interview that the actual title of the job was "Auditor." The responsibilities, he says, were "very different" than his prior position, and involved "travel each month to the homes of persons receiving public assistance from New York." (Defendant contends that plaintiff cannot raise this distinction for the first time in opposition to a summary judgment motion, but it is set forth in the complaint.) Plaintiff advised the interviewers that he was not qualified to be an Auditor and that he wanted to return to his prior position, now at ACS. Nevertheless, he was thereafter offered the job, and he took it, afraid that if he did not, he would lose his place on the preferred list. He started work for HRA in February, 2000 at a slightly higher salary than he had received in his prior position. The record shows that the title of this job was "Caseworker," not "Auditor."

Prior to receiving the interview notice from HRA, plaintiff had reached out to ACS in May, 1999 to apply for reinstatement with that agency, recognizing, correctly, that his prior job

3

had formally been moved to ACS. ACS took a long time with his application, which apparently was its standard operating procedure. In June, 2000, ACS determined to reinstate him – not realizing that he was already working for HRA – with a start date some time in August, 2000. However, once ACS realized that plaintiff was already working for HRA, it stopped processing his application. This was because, under §4.7.7 of the City's Personnel Rules and Regulations, once someone is pulled off the preferred list and given a job by a City agency, no other agency can hire him off the list for a similar or lower grade position. Plaintiff says ACS informed him during the first week of August, 2000, that he would not be rehired, although, he says, he was not told the reason.

As one might foretell from this rendition of the events, things did not go well for plaintiff at HRA. He was brought up on charges for misconduct, insubordination, violation of HRA regulations regarding the performance of employee duties and acting in a manner that brings discredit to the agency. When a recommendation of dismissal resulted from an "informal conference," plaintiff filed a grievance pursuant to the Collective Bargaining Agreement between his Union and the City.

The grievance was settled by stipulation dated January 4, 2002. The Stipulation of Settlement provided, among other things, that plaintiff could keep his job through the end of that month and that he would keep his pension rights. In addition, the Stipulation contained a release that provided:

> The grievant and the Union, jointly and severally, hereby release the Department and the City of New York from any and all claims, whether at law, in equity, or in any proceeding arising by virtue of the collective bargaining agreement between the City of New York and the Union, which grievant and the Union may now have or which they may have had heretofore in connection with the underlying dispute in HRA/OLR File Number 01/05-0026.

4

Plaintiff thereupon brought this action. The pro se complaint is difficult to decipher; it is handwritten, as is plaintiff's opposition to defendant's summary judgment motion. As best this Court can tell, the essence of the complaint is that the decision of ACS to refuse to reinstate him violates the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. and the Americans with Disabilities Act, 42 U.S.C. §12112 et seq.

## DISCUSSION

Defendant ACS moves for summary judgment on four grounds: (1) the release signed by plaintiff in connection with his grievance procedure bars his claims; (2) plaintiff's claims are time-barred; (3) plaintiff has failed to make out a prima facie case of age or disability discrimination; and (4) ACS is not susceptible to suit.

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If "reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Only disputes about material facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. Id. at 248. Where a motion for summary judgment is predicated upon the absence of proof of an essential element of a particular claim for relief, the nonmoving party must produce evidence such that a rational trier of fact could find in its favor on that element. See Giannulo v. City of

5

New York, 322 F.3d 139, 141 n. 2 (2d Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)). Mere speculation and conjecture are not sufficient to defeat summary judgment. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) cert. den'd 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

With this standard in mind, the Court turns to each of defendant's arguments in turn.

### 1. The Release Does Not Apply

Defendant's argument that the release plaintiff signed as part of the stipulation discontinuing his grievance bars these claims is disingenuous. In its brief, defendant quotes only the first part of the release, leaving off the important qualifying clause, "in connection with the underlying dispute in HRA/OLR File Number 01/05-0026." This was a limited release, not a general release. Since defendant has failed to offer any evidence that the claims raised in this lawsuit were part of "the underlying dispute" – and it seems unlikely that they were, since the issue there was plaintiff's conduct while employed at HRA – the release is immaterial to this action.

### 2. At Least Part of Plaintiff's Claim May Be Time-Barred

Claims arising from any acts of discrimination that occurred more than 300 days prior to the time plaintiff filed his administrative complaint with the New York City Commission on Human Rights ("NYCCHR") are time-barred. Plaintiff does not argue, and there are no facts in the record to suggest, that equitable tolling or continuing violations might serve to adjust this period.

Beyond that, little can be concluded on this record. Defendant contends that "plaintiff dual filed his administrative complaint with the New York City Commission on Human Rights alleging that Defendant discriminated against him on the basis of his age and disability when they failed to reinstate him as a Caseworker." Defendant's moving brief at 9. However, the Court does not see that on this record. The closest document supporting the statement in defendant's brief is a letter to the NYCCHR from plaintiff, again handwritten, dated April 8, 2001 (not February 8, 2001), which is annexed to plaintiff's complaint. Plaintiff's complaint, in turn, refers to his having filed a NYCCHR complaint in August, 1999 when plaintiff had been removed from the list for failure to appear at a scheduled interview, but there is no such document in the record. Contradictorily, plaintiff also states that he was summoned to NYCCHR in February 2001 "to sign a formal complaint regarding [ACS] not reinstating plaintiff in his former job." Complaint at p. 6. Adding to the confusion, plaintiff's complaint annexes excerpts of responsive papers that defendant apparently filed with the NYCCHR, one of which is dated April 23, 2001, and one of which is undated but bears a fax stamp of May 9, 2002.

Given that plaintiff had not yet been denied reinstatement to ACS in August, 1999, the more likely dates for plaintiff's complaint to NYCCHR are April 8, 2001 and February, 2001. If plaintiff's April 8, 2001 letter to NYCCHR is the complaint to which defendant is referring, it raises more questions than it answers, both as to the timeliness point and the merits of this case. First, as noted, the date is April 8, 2001, not February 8, 2001, which would mean that claims or portions of claims arising from acts that occurred prior to June 14, 2000 (not April 14, 2000, as defendant contends) would be time-barred. Second, the allegations appear to relate to complaints of age and disability discrimination during the period of plaintiff's reinstatement at HRA, not ACS' failure to reinstate plaintiff in August, 2000.

7

Third, and paradoxically, the response to those allegations, again annexed only to plaintiff's complaint, suggests that ACS, not HRA, responded to those allegations. If, indeed, plaintiff's administrative complaint concerned his treatment while at HRA, even if ACS for some unknown reason responded to that complaint, then the issue arises as to whether the instant action, which as the Court understands it, relates to ACS' refusal to reinstate plaintiff in August of 2000, is even properly brought, as there is no sign that the reinstatement issue was raised by the April 8, 2001 letter. If the date is February 8, 2001, as alleged by defendant, then claims arising from acts that occurred prior to April 14, 2000 would be time-barred.

In any event, if this lawsuit concerns ACS' decision to "pull the plug" on the hiring process and not reinstate plaintiff, which is the way the Court is interpreting the complaint, then according to both parties, that decision occurred between June and August, 2000, and a claim on it would not be time-barred. Any allegation that ACS should have reinstated him prior to that time would be time-barred.

The record obviously lacks sufficient clarity to grant summary judgment on this issue. However, the fact that defendant has not placed the seminal document on which it bases its statute of limitations argument before the Court suggests that the document may have been misfiled or the Court may not have received it. If that is the case, defendant is authorized to move for reconsideration to clarify this issue. Given the 10-day time limit under the local rules for moving for reconsideration, this motion may be filed by a Notice of Motion without supporting papers; the Court will thereupon set a briefing schedule.

8

### 3. Plaintiff Has Failed to Establish a Prima Facie Case

The complexities attendant to the limitations argument can be avoided if the Court's reading of plaintiff's complaint is correct. As the Court reads the complaint, plaintiff is complaining that he was not reinstated with defendant as a result of age and/or disability. The complaint in its most understandable section alleges that "the Administration for Children Services, 150 William St., NYC, denied the plaintiff the right to be re-instated in an employment position that the plaintiff held at the Bureau of Child Support [the former division of HRA], doing business at 115 Chrystie Street, NYC." Complaint at p. 4.

There is not a scintilla of evidence in this record to suggest that defendant's decision not to reinstate plaintiff was the result of age or disability discrimination. To the contrary, every fact here compels the conclusion that the only reason defendant did not reinstate plaintiff was because HRA had already reinstated him and City regulations prohibit one agency from poaching another's employees.

From the time that plaintiff submitted his application for reinstatement, defendant appears to have put him on a track to get that done. To be sure, it was a slow track, but the record is undisputed that that is the hiring process that defendant uses. Plaintiff's own allegations acknowledge that defendant went so far as to schedule an interview with him prior to his starting work at HRA. He did not get the notices, and thus was removed from the preferred list, but he was restored to the preferred list when he explained that he had not received the notices. Both the scheduling of the interview and the restoration to the preferred list show that there was no plan to prevent plaintiff from being rehired. Thereafter, plaintiff actually has written documentation from 2000 showing that defendant was going to hire him imminently. Indeed, plaintiff himself states that he negotiated an August 14, 2000 start date with ACS. Defendant's

9

explanation that it had to stop the reinstatement process based on a City regulation is proven by the text of the regulation.

Thus, the real problem here is that plaintiff took the position with HRA. But for that choice, defendant would have reinstated him. This is not to criticize or second guess plaintiff for making that choice; the Court recognizes that he was in a difficult position of either taking a bird in hand, although not the bird he wanted, or putting any opportunity for reinstatement at risk by declining HRA's offer and petitioning for restoration to the preferred list. The fact is, however, that this difficult position was the result of the City's hiring process, not age or disability discrimination.

In contrast to defendant's bona fide reason for halting the hiring process, plaintiff has offered no evidence of discrimination. The most he can say about age in either his complaint or his opposition to summary judgment is that "age is always a factor in hiring anyone." Opposition at p. 4. That statement is not true, and more importantly, there is no evidence that plaintiff has offered to show how it applies to him. There is not a single statement of any agent of defendant, nor a single piece of circumstantial evidence, suggesting that age was a factor.

The same is true with respect to defendant's claim of disability discrimination. Defendant is wrong to the extent it suggests that since plaintiff no longer had a disability at the time he applied for reinstatement, he cannot state a claim under the ADA. A refusal to hire because of the fear or stigma of a prior disability is actionable under the ADA. Colwell v. Suffolk Cty. Police Dept., 158 F.3d 635, 645 (2d Cir. 1999) (the ADA's definition of "disability" includes a record of a prior disability, the intent of the provision being to ensure that people are not discriminated against because of a history of disability). However, there is no evidence here that plaintiff's prior disability was a factor in defendant's decision to stop processing his

application. Again, plaintiff cannot cite a single statement by any agent of defendant, nor any circumstance that could support the conclusion that his prior disability was a factor in the decision not to reinstate him.

To prove a violation of the ADA, plaintiff must demonstrate that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was the subject of an adverse employment action (here failure to reinstate) *because* of his disability. Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 149 (2d Cir. 1998) (emphasis added).

Assuming that plaintiff met the first three elements of a prima facie claim by demonstrating that he is a "qualified individual with a disability" and defendant is covered by the statute, it is not enough simply for plaintiff to show that he was denied reinstatement – he must produce some evidence that he was denied because of his disability. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 88 (2d Cir. 2004); Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

On the basis of this record, in order to find a triable issue here, the Court would have to allow the possibility that defendant used the prohibition on stealing employees from sister agencies as a pretext to cover its discriminatory intent. Even if plaintiff had alleged this, and he certainly has not alleged it expressly, this would be rank speculation, the equivalent of validating a conspiracy theory, as there are no facts to support it and every fact compels the opposite conclusion.

## 4. Defendant Was Improperly Named

Defendant is correct that agencies of the City of New York cannot be sued in their own names; the proper defendant is the City of New York. N.Y. City Charter § 396; Pimentel v. City of New York, 2000 WL 1576871, *2 (S.D.N.Y. 2000) ("Individual City agencies are not suable entities unless specified by law."). This is a small point considering that if the case were to go forward, the Court would simply order the substitution of the City. Given the Court's disposition of this motion, such substitution is unnecessary.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED, and the complaint is DISMISSED. Defendant may move for reconsideration on the limitations point if it is so inclined consistent with the procedure described above.

**SO ORDERED.**

Dated: Brooklyn, New York
September 11, 2006